IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Jamie Rudzinski, individually and as the duly appointed guardian Ad Litem of DB, 1997, a minor under the age of 14 years, | ) ) ) ) | C/A No.: 0:09-1819-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| BB, 1995, a minor under the age of 14 years, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Through this action, plaintiff Jamie Rudzinski seeks to recover damages for injuries suffered by her son, DB, as a result of defendant BB hitting DB in the face with a golf club. This matter comes before the court on BB's motion for summary judgment (Dkt. No. 27). The motion has been fully briefed and the court heard oral argument at a March 17, 2010 hearing, where the court took the matter under advisement. Because the court finds that BB's duty of care did not encompass the risk DB encountered, the court grants BB judgment as a matter of law.

I.    Background

On the evening of March 17, 2010, DB and BB, ages 9 and 11 respectively, ventured on to the golf course abutting the backyard of DB's parent's residence. DB's parents were home at the time, but were otherwise engaged in either washing dishes or mowing the lawn. BB had never played golf before, and was not familiar with golf safety. After DB gave BB

some instruction on how to use and swing the clubs, the boys alternated hitting balls down the course. After each boy hit several shots, BB took his turn and lined up his shot. As BB was preparing to swing, DB saw an extra ball near the ball BB intended to strike, told BB not to swing, and went to move it. Presumably not hearing DB's warning, BB swung and hit DB in the face just after DB picked up the extra ball. DB sustained injuries to his head that required hospitalization. His injuries were not permanent, other than a facial scar.

On June 3, 2009, Rudzinski filed suit on behalf of DB in the Court of Common Pleas for York County, South Carolina, against BB for "negligence, carelessness, gross negligence, [and] recklessness." (Compl. ¶ 13.) BB thereafter removed the case to federal court on the basis of diversity jurisdiction. 28 U.S.C. § 1332. (Dkt. No. 1.)

II.    Standard

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis omitted). A fact is material if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). An issue is genuine if the evidence

offered is such that a reasonable jury might return a verdict for the nonmovant. Id. at 257. In cases where the parties dispute material facts, "the non-moving party is entitled to have his evidence as forecast assumed, his version of that in dispute accepted, and the benefit of all favorable inferences." Henson v. Liggett Group, Inc., 61 F.3d 270, 275 (4th Cir. 1995). Moreover, the court "may not make credibility determinations or weigh the evidence." Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

III.  Discussion

BB contends that he is entitled to summary judgment because coparticipants in sporting activities owe one another a "lessened duty of care," and conduct short of reckless or intentional action is not susceptible to liability. (Mot. Summ. J. 7.) BB argues that his conduct was neither reckless nor intentional, and that, accordingly, he cannot be held liable for his swing. In response, Rudzinski argues that the law requires due care, that BB failed to hold himself to that standard, and that he should be held liable for DB's injuries on a theory of ordinary negligence. (Resp. 3.)

The duty coparticipants in sporting activities owe one another is an issue of first impression in South Carolina. Accordingly, this court must predict how South Carolina courts would rule if presented with the precise question before this court. Comm'r of Internal Revenue v. Bosch's Estate, 387 U.S. 456, 465 (1967) ("If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State.").

A.     Applicable Duty

In order to state a claim for negligence, a plaintiff must properly identify the duty owed and breached, establish the legal cause, and prove damages. Hurst v. East Coast Hockey League, Inc., 637 S.E.2d 560, 562 (S.C. 2006). As mentioned above, the duty applicable to coparticipants in sports is undefined in South Carolina. South Carolina does, however, recognize the doctrine of primary implied assumption of risk. See id.; Davenport v. Cotton Hope Plantation, 508 S.E.2d 565, 570 (S.C. 1998). According to this doctrine, a plaintiff "impliedly assumes those risks that are inherent in a particular activity." Davenport, 508 S.E.2d at 570 (emphasis in original). Primary implied assumption of risk is not an affirmative defense, but rather "goes to the initial determination of whether the defendant's legal duty encompasses the risk encountered by the plaintiff." Id. And the doctrine goes hand in hand with principle that "[i]f there is no duty, then the defendant in a negligence action is entitled to judgment as a matter of law." Id. In this sense "primary implied assumption of risk is but another way of stating the conclusion that a plaintiff has failed to establish a prima facie case [of negligence] by failing to establish that a duty exists." Hurst, 637 S.E.2d at 562 (quoting Perez v. McConkey, 872 S.W.2d 897, 902 (Tenn. 1994)) (alteration in original).

The question before the court is whether BB had a duty to protect DB from the inherent risks of golf. On the facts of this case, the question then becomes whether the risk of being hit by a golf club inheres in the sport of golf.

A number of courts have answered that question in the affirmative.  See Hotak v. Seno, 2001 WL 752711, *3 (Conn. Super. Ct. June 12, 2001) ("Risk of injury is a common and inherent aspect of athletic effort generally . . . .  The risk of injury is just as real when it arises from an instrumentality used in a game, such as a swinging golf club."); Bowman ex rel. Bowman v. McNary, 853 N.E.2d 984 (Ind. Ct. App. 2006) (holding that the nature of the parties' "relationship and the circumstances surrounding it suggest that it was based on their common participation in a sport that, while not as dangerous as many, still involved certain inherent risks, such as being struck unintentionally by either a golf ball or club while on a course or practice tee."); Nesbitt v. Bethesda Country Club, Inc., 314 A.2d 738, 742 (Md. Ct. App. 1974) (risk of being struck by club incidental, foreseeable, and inherent in golf); Schick v. Ferolito, 767 A.2d 962, 968 (N.J. 2001) ("[R]isk of injury is a "common and inherent aspect" of athletic effort generally . . . [and] is [just] as real when it arises from an instrumentality used in a game, such as a golf club a golfer swings."); Griffin v. Lardo, 668 N.Y.S.2d 837, 837 (N.Y. App. Div. 1998) (where one child showed another how to swing a golf club in a backyard, "[t]he risk of the present injury is obvious, and, by voluntarily participating in the activity, plaintiff's daughter assumed the risk of injury despite her age and inexperience."); Ickes v. Tille, 674 N.E.2d 738, 741 (Ohio Ct. App. 1996) ("The risk that one of the participants might get hit when one of the other participants swings his golf club is a risk that is inherent to this activity.").  Other courts have taken a contrary position.  See Hemady v. Long Beach Unified Sch. Dist., 49 Cal. Rptr. 3d 464, 472 (Cal. Ct. App. (2006))

("[W]e conclude that being hit in the head by a golf club swung by another golfer is not an inherent risk in golf."); Sullivan-Coughlin v. Palos Country Club, 812 N.E.2d 496, 503 (Ill. App. Ct. 2004) ("Because there are no inherent risks in golf, defendant was not entitled to a primary implied assumption of risk defense."); Everett v. Goodwin, 161 S.E. 316, 318 (N.C. 1931) ("A golf course is not usually considered a dangerous place, nor the playing of golf a hazardous undertaking.").

The court finds that the risk of being hit by a fellow golfer swinging his club at high speed is an inherent and inescapable risk posed by golfing. That is to say that an individual who voluntarily encounters this inherent risk through participation in the sport assumes any harm flowing from his coparticipant's attempts to strike the ball. Here, DB and BB engaged in an informal game of golf, and BB, though a stranger to the game, appears to have earnestly attempted to strike the ball down the course. Unfortunately, DB's attempt to retrieve an errant ball coincided with BB's motion. The court finds that the danger presented to DB was impliedly assumed by him when he and BB ventured on to the golf course and began swinging clubs and striking balls down the course. In doing so, BB did not have a duty to protect DB from inherent risks in golf, including those risks posed by the swinging of a golf club—an integral component of the sport.

B.     The Question of Recklessness

Jurisdictions that have adopted the doctrine of primary implied assumption of risk in the context of sporting activities have carved out an exception for reckless or intentional

conduct. See, e.g., Marchetti v. Kalish, 559 N.E.2d 699, 703–04 (Ohio 1990) ("We hold that where individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either "reckless" or "intentional.""); Knight v. Jewett, 834 P.2d 696 (Cal. 1992) ("[W]e conclude that a participant in an active sport breaches a legal duty of care to other participants—i.e., engages in conduct that properly may subject him or her to financial liability—only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport."). The court assumes that South Carolina would do the same, mostly because one does not impliedly assume the risks posed by reckless or intentionally injurious conduct when playing golf—such conduct not inhering therein. Under South Carolina law, recklessness means a conscious failure to exercise due care—to meet this standard DB would have to show that BB consciously disregarded his safety. Yaun v. Baldridge, 134 S.E.2d 248 (S.C. 1964); Parker v. Simmons, 161 S.E. 169 (S.C. 1931); see also Ray v. Simon, 140 S.E.2d 575, 578 (S.C. 1965) (finding that recklessness is a question of law when there is only one reasonable inference to be drawn from all the testimony).

After reviewing the briefs and supporting documents, and viewing them in the light most favorable to DB, the court does not find sufficient evidence from which a reasonable jury could find recklessness.[1]  The sole fact militating in favor of recklessness is DB's

---

[1] The court only delves into this issue in the interest of completeness. DB does not assert that BB acted intentionally or recklessly in his response to summary judgment—BB appears to abandon any

statement to BB "to not swing yet." (DB Dep. 8:22–24.) BB's uncontroverted testimony indicates, however, that he did not hear DB's plea (Id. at 17:22). And DB has put forth no evidence indicating that BB heard, responded to, or otherwise reacted to his request. The record further indicates that the boys were alternating shots and remained five to eight feet apart between shots. (BB Dep. 16:24; 17:14.) On these facts, the court finds that DB has failed to put forth sufficient evidence from which a reasonable jury could conclude that BB engaged in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport of golf, or that he acted intentionally in striking DB. Nor does the record support a finding that BB consciously disregarded DB's safety.

IV.    Conclusion

Because BB injured DB through conduct consistent with the inherent risks presented by golf, and because there is no evidence of intentionally injurious or reckless conduct, the court finds that DB has failed to establish that BB's duty of care encompassed the risk involved. Accordingly, the court concludes that Rudzinski's action fails as a matter of law under the doctrine of primary implied assumption of risk. Summary judgment is granted for BB.

---

claim other than negligence, by implication, with the statement: "The Plaintiff has alleged that Defendant was negligent in striking him in the face with a golf club on June 13, 2006, and that this negligent action caused him great bodily injury." (Resp. 1.)

IT IS SO ORDERED.

July 9, 2010
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge